[No. F018883. Fifth Dist. Nov. 1, 1993.]

JOHN A. WEBSTER, Plaintiff and Appellant, v.
TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, Defendant
and Respondent.

1458

**COUNSEL**

Werdel & Shea and Kelly A. Griffin-Lazerson for Plaintiff and Appellant.

Jessica K. Frazier for Defendant and Respondent.

**OPINION**

**FRANSON, J.\***—This appeal requires us to consider the California State University system's (hereafter trustees or respondent) administrative procedures for terminating the employment of tenured faculty members who are more than 70 years old. We also consider the appropriate standard of review of the administrative decision under mandamus petition to the superior court.

### FACTS AND PROCEDURAL HISTORY

Appellant John A. Webster (appellant) became a professor in the criminology department at California State University, Bakersfield, in 1974. He subsequently received tenure and full professor rank. In 1988, he turned 70 years old.

---

\*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.

The trustees' regulations provide that a tenured professor who reaches 70 years of age shall have the right to continue teaching only if, upon the professor's timely request, he is certified annually by the president of the particular university. (Cal. Code Regs., tit. 5, §§ 43660, 43661.)[1] Such certification "shall be granted to the tenured faculty member whose job performance is standard or above." (§ 43663, subd. (d).)

Appellant was certified for each of the first two years after reaching age seventy. The second year's certification mentioned several reservations about recertification reflected in the evaluation documents. The certification letter requested that appellant "work closely" with the administration to address these reservations.

On January 30, 1990, appellant was denied recertification for the third year, the 1990-1991 academic year. The decision was based in particular on appellant's "failure to play a more positive and constructive role in the ongoing efforts to improve the curriculum in [his] department, and in providing sound and appropriate advising to students majoring in Criminal Justice. [Appellant's] professional growth record was also judged to be weak and below the level of performance expected of a senior professor at this institution."

On February 22, 1990, appellant filed a grievance notice and a request for a hearing to contest the denial of his recertification request. The trustees, acting through the university, refused to process the grievance. On November 14, 1990, appellant obtained a writ of mandate from the Los Angeles County Superior Court, requiring trustees to accept appellant's grievance for processing in accordance with Education Code section 89542.5. The trustees thereafter submitted a grievance procedure to the superior court, and a grievance hearing was conducted pursuant to those procedures before a three-member faculty hearing committee (FHC) on April 29 through May 1, 1991.[2]

On May 6, 1991, the FHC determined in a written decision appellant had not been treated unfairly in the denial of recertification. The committee concluded appellant's teaching was adequate although he had failed to demonstrate that his courses were rigorously graded; he had not engaged in scholarly activities that were adequate; and his service to the university was

[1]Further section references are to title 5 of the California Code of Regulations unless otherwise noted.

[2]Neither party appealed the judgment of the superior court directing a hearing "pursuant to Education Code section 89542.5," concerning grievance hearings. Appellant does not contend on appeal that the trustees' noncertification decision was appealable to the State Personnel Board pursuant to Education Code section 89539. We note from the record herein that effective April 2, 1992, noncertification was designated as a "faculty status matter" under the collective bargaining agreement governing academic personnel of the state university system. As such, noncertification became subject to informal resolution under the agreement, to the exclusion of the statutory grievance procedure. (See Ed. Code, § 89542.5, final paragraph.)

substandard due to conflicts within his department, although service to the community was adequate.

On November 22, 1991, appellant filed a petition for administrative mandamus in Kern County Superior Court. That court determined that postretirement-age employment was not a vested right; that appellant had not been deprived of due process; and that substantial evidence supported the determination of the FHC. The court entered judgment denying the petition. Appellant filed a timely appeal.

## DISCUSSION

■ Government Code section 12942 initially provides that "Every employer . . . shall permit any employee who . . . can demonstrate the ability to do so, to continue his or her employment beyond any retirement date contained in any private pension or retirement plan." Subdivision (a), however, provides: "Nothing in this section . . . shall be construed . . . [¶] (a) To prohibit an institution of higher education . . . from imposing a retirement policy for tenured faculty members, provided that the institution has a policy permitting reemployment of these individuals on a year-to-year basis."

Contrary to the parties' arguments, this section neither abolishes tenure at age 70 nor preserves it beyond age 70. By its clear language the section merely permits the trustees to adopt policies that treat professors over 70 differently than younger professors. The statute permits a wide range of responses, from a full continuation of tenure beyond age 70 to a system with annual reviews at which the employee must "demonstrate the ability to do" his or her job. This case does not require us to pass upon the outer limits of any policy establishing a less-vested type of post tenure employment. The trustees have in fact adopted a clear policy that is much closer to the "unlimited tenure" end of the scale than the "not vested" end of the scale.

The trustees' policy is contained in article 15.6 of title 5 of the California Code of Regulations, composed of sections 43660 to 43667. As noted above, these regulations "provide for the certification of eligibility of tenured faculty of the California State University who have attained age 70 to continue employment." (§ 43660.) Pursuant to these regulations, "[a] tenured faculty member who receives certification of eligibility shall continue to have tenure during the certification period." (§ 43665.) Such a certification is effective for one year from its effective date. (§ 43661, subd. (b).) "Certification *shall be* granted to the tenured faculty member whose job performance is standard or above." (§ 43663, subd. (d), italics added.)

Thus, regardless of whether statutory authority would permit respondent to terminate tenured faculty members when they reach age 70 and then to rehire them on some nontenured basis, respondent has not in fact attempted to do so. Instead, respondent has elected to implement a system that allows administrative termination of tenure and employment (§ 43662) if the tenured employee's performance on the job is not "standard or above." (§ 43663, subd. (d).) Therefore, until appellant's certification request was refused for cause, i.e., his job performance was factually determined to be substandard, his "tenure" must have been deemed continuing and vested.

 Respondent contends even though the regulations speak in terms of tenure, the tenure in question is so limited that it does not constitute a property right in continued employment. In a very limited sense, respondent is correct. The regulation requires the employee to make a timely application for the continuation of tenure (§ 43662), and the right to continued employment lapses or terminates upon the failure of the employee to do so. Pursuant to *Coleman* v. *Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1117-1118 [278 Cal.Rptr. 346, 805 P.2d 300], the reapplication requirement can permit loss of tenure without a right to a hearing.

The present case, however, involves loss of continued employment in circumstances where the employee has duly and timely requested continuation of employment. The state has exercised a discretionary, factfinding role in response to the employee's request (i.e., finding his job performance to be substandard), and has affirmatively acted to terminate the employment. Again, *Coleman* provides the answer: in these circumstances the employee has a protected property interest in continued employment. (*Coleman* v. *Department of Personnel Administration, supra,* 52 Cal.3d at p. 1118; see also *Board of Regents* v. *Roth* (1972) 408 U.S. 564, 576-577 [33 L.Ed.2d 548, 560-561, 92 S.Ct. 2701]; *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 823-824 [140 Cal.Rptr. 442, 567 P.2d 1162].) "In short, the full rights [of tenure] *vest* upon [certification] subject to divestment upon periodic review only after a showing of adequate cause for such divestment in a proceeding consistent with minimal due process requirements." (*Id.* at pp. 824-825.)

Two important consequences flow from the decision that appellant had a vested right to continued employment under the administrative scheme adopted by the university. First, appellant is entitled to an independent review of the administrative record by a superior court judge under Code of Civil Procedure section 1094.5. (*Turner* v. *Board of Trustees* (1976) 16 Cal.3d 818, 824-825 [129 Cal.Rptr. 443, 548 P.2d 1115]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242].) The trial court

explicitly employed substantial evidence review. Accordingly, this case must be remanded for further proceedings pursuant to the correct standard.

■ Second, the burden of proving appellant's incapacity to perform his job according to the required criteria should rest with the trustees. Appellant argues he was deprived of a fair hearing before the FHC because the burden was placed on him to prove he met the recertification criteria rather than being placed on the trustees to prove he failed to meet the criteria. Appellant objected to this burden of proof allocation before and at the outset of the FHC hearing.

Evidence Code section 500 provides, "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." As used in Evidence Code section 500, the burden of proof means the obligation of a party to produce a particular state of conviction in the mind of the trier of fact as to the existence or nonexistence of a fact. (See Evid. Code, §§ 115, 190.) If this requisite degree of conviction is not achieved as to the existence of a particular fact, the trier of fact must assume the fact does not exist. (Cal. Law Revision Com. com., 29B West's Ann. Evid. Code, § 500 (1966 ed.) p. 430.) Thus, under Evidence Code section 500 the burden of proof is normally on the party to whose case the fact is essential. Since appellant was seeking relief from termination of employment, it may be argued he should have had the burden of proving his job performance. (Since respondent was trying to terminate appellant's employment, it also can be argued it should have had the burden of proving appellant's incapacity.)

Assuming the general rule would allocate the burden of proof to appellant, the rule applies, "except as otherwise provided by law." (Evid. Code, § 500.) "In determining whether the normal allocation of the burden of proof should be altered, the courts consider a number of factors: the knowledge of the parties concerning the particular fact, the availability of the evidence to the parties, the most desirable result in terms of public policy in the absence of proof of the particular fact, and the probability of the existence or nonexistence of the particular fact. In determining the incidence of the burden of proof, 'the truth is that there is not and cannot be any one general solvent for all cases. It is merely a question of policy and fairness based on experience in the different situations.' " (Cal. Law Revision Com. com., 29B West's Ann. Evid. Code, § 500, *supra*, p. 431, quoting from 9 Wigmore, Evidence (3d ed. 1940) § 2486, p. 275.)

We think it clear the trustees probably had more knowledge about appellant's job performance before the FHC hearing commenced than did appellant himself, and the trustees certainly had greater access than appellant to

the evidence showing such inability to perform. Most of the evidence presented against appellant at the hearing came from the university's own records, particularly the evidence gathered by the university officials in the course of the extensive peer and administrative evaluations that took place before the FHC hearing. Finally, the most desirable result in terms of public policy, absent proof of the particular fact (appellant's job performance), is answered by the trustee's own regulation (§ 43663, subd. (d)), which essentially mandates the granting of certification absent a determination that the applicant is unqualified for further employment. (See also Ed. Code, § 89539 [when State Personnel Board hears appeal of any "employee dismissed, suspended, or demoted for cause," burden of proof is on "the party taking the dismissal action"].) Absent such proof of substandard job performance, appellant would have been presumed competent to perform his job. For these reasons, we conclude fairness and sound policy require placing the burden of proving appellant's job performance or lack thereof on the trustees.

■ Nevertheless, error occurring in an administrative proceeding will not vitiate the ruling unless it actually prejudices the petitioner. (*Lucas Valley Homeowners Assn.* v. *County of Marin* (1991) 233 Cal.App.3d 130, 147 [284 Cal.Rptr. 427].) The question, therefore, is whether the burden of proof error "skewed the result—is it more probable than not that the [recertification] would have been [granted] absent the [error]?" (*Ibid.*) We find no actual prejudice to appellant from the wrongful allocation of the burden of proof. The record shows appellant received a full and fair hearing; he was permitted to introduce all the evidence he desired, to engage in full cross-examination of opposing witnesses, and to thoroughly argue the matter through counsel. We find no probability from the record the FHC would have reached another result absent the error. Moreover, any intrinsic prejudice that might be argued to have resulted from the proof-allocation error will be obviated by the judge's independent evaluation of the evidence on remand. In such a review, the judge will be directed to place the burden of proving appellant's incapacity to perform his duties on the trustees.

■ Appellant also argues he was deprived of procedural due process because he was neither charged with nor terminated from his employment for violating "clearly established, objective and articulated" standards. He contends the "standard or above" criteria established by the trustees' regulations for evaluation of a tenured professor's job performance (§§ 43663, subd. (d), 43664) is too obscure to meet due process requirements. However, the record reflects that appellant was advised at all times the evaluation criteria would consist of the traditional standards used in all faculty evaluations, whether for retention, promotion or tenure. These standards pertain to teaching, scholarship and service to the university and the

community and are increasingly stringent depending on the rank, tenure status, and seniority of the person evaluated. More is expected from a senior tenured faculty member than from a lecturer. These standards were published in the university faculty handbook.

The evidence also showed appellant was familiar with the standards; he had applied them himself in the past as a participant in faculty evaluation committees, and there was a common ground of understanding of the criteria among all the participants, including the FHC members themselves. Finally, the same standards were used in the prior year's certification process. Any lingering vagueness in the criteria of "standard or above" was resolved in the recertification process. In fact, the denial in large part was based on appellant's failure to correct the specific deficiencies identified in the prior certification.

■ Appellant's final contention is that because the trustees refused his request for an appeal of the recertification denial, he was wrongfully deprived of his wages for the 1990-1991 academic year. Appellant's request for recertification was denied by the university president on January 30, 1990. Because respondent refused to grant appellant's request for an appeal, i.e., a grievance hearing, he was forced to petition the Los Angeles County Superior Court for a writ commanding the university to grant him a hearing before the FHC. On November 14, 1990, the superior court ordered the issuance of a peremptory writ commanding the trustees to accept appellant's grievance for processing in accordance with Education Code section 89542.5. (See fn. 2, *ante*, p. 1460.)

However, we find no authority for awarding backpay to appellant before it is determined that he was wrongfully terminated from his employment. It appears from the decided cases that only when the *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 215 [124 Cal.Rptr. 14, 539 P.2d 774], minimal pretermination due process requirements have been violated may backpay be awarded from the time discipline is actually imposed to the date the administrative board files its decision. (See *Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 403 [134 Cal.Rptr. 206, 556 P.2d 306]; *Williams* v. *City of Los Angeles* (1990) 220 Cal.App.3d 1212, 1216 [269 Cal.Rptr. 869].) Appellant makes no contention that his *Skelly* due process rights were violated. Thus, he is not entitled to backpay at this juncture of the proceedings.

### DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to exercise its independent judgment on the evidence to determine

whether by the weight of the evidence the FHC abused its discretion. (Code Civ. Proc., § 1094.5, subd. (c).) The phrase "weight of the evidence" means "the evidence preponderates in favor of, or against, the administrative decision under review." (*Chamberlain* v. *Ventura County Civil Service Com.* (1977) 69 Cal.App.3d 362, 367-368 [138 Cal.Rptr. 155]; 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 263, p. 891.) In making this determination, the court shall place the burden of proving appellant's inability to perform his duties on respondent.

Martin, Acting P. J., and Thaxter, J., concurred.