[No. A059170. First Dist., Div. Two. May 25, 1994.]

LESTER E. DUBINS, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Defendant
and Respondent.

[No. A059272. First Dist., Div. Two. May 25, 1994.]

MILTON SOBEL, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Defendant
and Respondent.

**COUNSEL**

Steinhart & Falconer and Dov M. Grunschlag for Plaintiffs and Appellants.

James E. Holst, Christine Helwick, Marianne Schimelfenig, Crosby, Heafey, Roach & May, John L. Beers, Paul D. Fogel and Peter L. Shaw for Defendant and Respondent.

## OPINION

**KLINE, P. J.**—Lester E. Dubins and Milton Sobel, appellants in these consolidated cases, were tenured professors at the University of California (University) compelled to retire at age 70 by a University policy they claim violates state law prohibiting age discrimination. The issue is one of first impression.

I.

The appeals—which challenge orders sustaining the University's general demurrers to the complaints without leave to amend[1]—require us to interpret Government Code section 12942,[2] a provision of the Fair Employment and Housing Act. (§ 12900 et seq.)

Section 12942, which was originally enacted in 1980 and amended in significant particulars in 1983, states that "Every employer in this state shall permit any employee who indicates in writing a desire in a reasonable time and can demonstrate the ability to do so, to continue his or her employment beyond any retirement date contained in any private pension or retirement plan. [¶] This employment shall continue so long as the employee demonstrates his or her ability to perform the functions of the job adequately and the employer is satisfied with the quality of the work performed."

Subdivision (a) of section 12942, which bears most directly on the issue before us, provides that sections 12941 (which generally prohibits age

---

[1]The notices of appeal from the identical orders sustaining the University's demurrers, which were both entered on June 23, 1992, are not appealable. (See, e.g., *Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644, 651 [150 Cal.Rptr. 242, 586 P.2d 556].) However, since judgments in favor of the University were duly entered in October 1992, after the notices of appeal were filed, no prejudice to the University would result, and dismissal of the appeal would serve no purpose, we exercise our authority under rule 2(c) of the California Rules of Court to treat the notices of appeal as premature but valid notices of appeal from the subsequently entered judgments of dismissal. (See, e.g., *Turpin* v. *Sortini* (1982) 31 Cal.3d 220, 224, fn. 2 [182 Cal.Rptr. 337, 643 P.2d 954].)

[2]All statutory references are to the Government Code unless otherwise indicated.

discrimination) and 12942 shall not be construed "To prohibit an institution of higher education . . . from imposing a retirement policy for tenured faculty members, *provided that the institution has a policy permitting reemployment of these individuals on a year-to-year basis.*" (Italics added.)

The question is whether the University has such a policy.

As requested by the University, the trial court took judicial notice of Standing Order No. 103.6, promulgated by the Regents of the University, and a portion of the University's Academic Personnel Manual (APM) pertaining to the service of tenured faculty following retirement. Standing Order No. 103.6, as pertinent, provides that "For faculty members and other academic appointees who hold tenure or security of employment, the date of retirement shall be the July 1 coinciding with or next following the person's 70th birthday. . . . The President [of the Regents] may appoint on a year-to-year basis faculty members and other employees who have attained their applicable retirement age, as long as such appointments are not in conflict with law."

APM 200-22, provides that "Academic appointees with tenure or security of employment . . . who have retired from the University of California may be recalled to active service on a year-to-year basis." The APM identifies four criteria that "shall be considered in determining whether to recommend or approve a recall appointment: (1) The teaching, research, and/or administrative needs of the department or unit. (2) Availability of office and laboratory space. (3) Budgetary resources. (4) Ability of the candidate in the areas required for appointment in the particular academic title or series. . . ."

The parties advance sharply conflicting views as to the meaning of subdivision (a) of section 12942 and whether the policy described by Standing Order No. 103.6 and APM 200-22 is one "permitting reemployment" within the meaning of that provision.

According to appellants, the premise of the statute is "that employees who have reached 'retirement age' should be permitted to continue to work if they wish and are able to do so." According to appellants, the right of able individuals who have reached retirement age to continue to work is "nullified" by a policy that leaves the reemployment decision to the employer at its sole and unfettered discretion. The University's policy is a "sham,"

appellants argue, because when a tenured member of the faculty reaches retirement age the University typically "removes his or her budgetary allocation from the departmental budget, and then claims that he or she cannot be reemployed because the 'temporary academic staff budget' is inadequate."

The University responds that under appellants' interpretation of the statute the University could never impose retirement on a tenured member of the faculty who desired to continue to work. According to the University, "the Legislature unambiguously gave the University discretion to reemploy only some retired professors—as circumstances warranted—thus allowing the University to hire new professors, including women and minorities, and to promote intellectual debate with innovative and different ideas from those professors."

The trial court agreed with the University. Based on its conclusion that the 1983 amendment did not require the University to "do anything more than have a policy," which could be as restrictive as it wished, the court concluded that the University "can impose restrictions on rehiring which make rehiring essentially ephemeral."

## II.

Where, as here, the appeal is from a judgment of dismissal after a demurrer is sustained without leave to amend, we must assume the truth of all material facts properly pleaded by the plaintiff-appellant or reasonable inferences that may be drawn from such facts. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; *First Nationwide Savings* v. *Perry* (1992) 11 Cal.App.4th 1657, 1662 [15 Cal.Rptr.2d 173].) The trial court commits reversible error when it sustains a demurrer without leave to amend where the plaintiff has alleged facts showing entitlement to relief under any available theory. (*Platt* v. *Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3d 1439, 1444 [266 Cal.Rptr. 601]; *Saunders* v. *Cariss* (1990) 224 Cal.App.3d 905, 908 [274 Cal.Rptr. 186]; *Lewis* v. *Purvin* (1989) 208 Cal.App.3d 1208, 1213 [256 Cal.Rptr. 827].)

Appellants' principal cause of action for violation of the Fair Employment and Housing Act[3] alleges that instead of adopting the permissive policy prescribed by subdivision (a) of section 12942, "the University has adopted

---

[3]The complaints each allege a residual cause of action "for violation of public policy," which assertedly consists of having "obtain[ed] a statutory exemption from the prohibition

and followed a practice that, by its terms and as applied, is intended to circumvent the requirement of the statute; has the intended effect of denying reemployment on account of age; and was applied against plaintiff because of his age and without good-faith consideration of his application for reemployment."

### III.

■ We believe the complaint satisfactorily states a cause of action under the Fair Employment and Housing Act and that, accordingly, it was error to sustain the demurrer without leave to amend.

At the outset, we note our unwillingness to enter the debate as to whether mandatory retirement for university professors is good or bad social policy. As explained at considerable length in our opinion in *Rittenband* v. *Cory* (1984) 159 Cal.App.3d 410, 425-432 [205 Cal.Rptr. 576], which pertains to the forced retirement of judges, we appreciate that reasonable arguments can be mustered both in support of and in opposition to mandatory retirement of individuals engaged in an intellectual enterprise affecting the public interest and welfare. Unlike *Kubik* v. *Scripps College* (1981) 118 Cal.App.3d 544 [173 Cal.Rptr. 539]—holding that an earlier version of section 12942 authorizing compulsory retirement of university professors satisfied the rational basis standard of equal protection review—appellants in this case are not questioning the constitutionality of the statute. The University's contention that mandatory retirement advances a legitimate state interest begs the question tendered in this case: whether the existing statute *authorizes* mandatory retirement.

■ "The meaning of the words of a statute, or to use the alternative approach favored by many courts, the intent of the Legislature, can only be determined with reference to the context in which the words are used; that is, with reference to such purpose as may be discerned from examining the entire enactment of which the words are part. A statutory phrase may be' said to be clear and unambiguous if the meaning assigned to it is not in conflict with other language in the same act. [Citations.] Thus, 'in analyzing the legislative usage of certain words, " 'the objective sought to be achieved by a statute as well as the evil to be prevented is of prime

against age discrimination on the condition set forth [in section 12942, subdivision (a)], while practicing age discrimination in circumvention of that condition in deception of the Legislature." This cause of action is clearly redundant, because it assumes a violation of the statute which, if true, is sufficient to entitle appellants to all the relief they seek.

consideration . . . .' " [Citation.]' " (*Leslie Salt Co.* v. *San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 614 [200 Cal.Rptr. 575], fn. omitted.)

As earlier noted, subdivision (a) of section 12942—the provision we are called upon to construe—is part of the Fair Employment and Housing Act, the purpose of which is to prohibit certain forms of invidious discrimination. (See § 12920.) Thus, section 12921 states that "The opportunity to seek, obtain and hold employment without discrimination because of race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, sex, or age is hereby recognized as and declared to be a civil right." Similarly, section 12941, which immediately precedes the statute in question, makes it "an unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, suspend, or demote, any individual over the age of 40 on the ground of age, except in cases where the law compels or provides for such action."

Section 12942, which provides the most immediate context of the subdivision whose meaning we must discern, commences with the statement that "Every employer in this state shall permit any employee who indicates in writing a desire in a reasonable time and can demonstrate the ability to do so, to continue his or her employment beyond any retirement date contained in any private pension or retirement plan." The statute goes on to say that "[t]his employment shall continue so long as the employee demonstrates his or her ability to perform the functions of the job adequately and the employer is satisfied with the quality of the work performed."

As originally enacted in 1980, subdivision (a) of section 12942 provided that nothing in sections 12941 and 12942 "shall be construed to prohibit compulsory retirement" of any employee "serving under a contract of unlimited tenure, or similar arrangement providing for unlimited tenure at an institution of higher education . . . ." In other words, tenured professors at the University were originally exempt from the provisions of the Fair Employment and Housing Act barring mandatory retirement and could be forced to retire.

The 1983 amendment of subdivision (a) of section 12942 would therefore have accomplished nothing if, as the University claims, it vests the University with sole and essentially unconstrained discretion to decide whether to rehire a tenured professor who had reached retirement age, because the

University already had that power.[4] The Fair Employment and Housing Act never prevented an employer from rehiring an employee it was given the legal authority not to rehire if it wished to do so. The interpretation of section 12942 urged by the University therefore assigns a meaning to the statute that would render the 1983 amendment purposeless. The contention that the amendment was not intended to and did not work a change in the law is not persuasive. ■ As we stated in *Froid* v. *Fox* (1982) 132 Cal.App.3d 832 [183 Cal.Rptr. 461], " '[t]he mere fact that the legislature enacts an amendment indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one. Therefore, any material change in the language of the original act is presumed to indicate a change in legal rights.' " (*Id.*, at p. 837, quoting 1A Sutherland, Statutory Construction (4th ed. 1973) § 22.30, p. 178, fns. omitted; accord, *Twin Lock, Inc.* v. *Superior Court* (1959) 52 Cal.2d 754, 761 [344 P.2d 788]; *People* v. *Weitzel* (1927) 201 Cal. 116, 118 [255 P. 792, 52 A.L.R. 811]; *Abbott* v. *City of San Diego* (1958) 165 Cal.App.2d 511, 524 [332 P.2d 324].)

■ We agree subdivision (a) of section 12942 would also be meaningless if it were construed to mean that tenured professors were automatically required to be rehired, because that result would obtain if the subdivision did not exist. But that is not the interpretation appellants urge nor the one we adopt.

As appellants correctly point out, the compromise that was fashioned by the statute was to deprive a member of the faculty who had reached retirement age only of the conclusive presumption tenure provides that he or she is able to meet the University's performance standards. Section 12942, subdivision (a) now obliges a retirement aged member of the tenured faculty to annually show that he or she is not only desirous of continuing to work but able to perform to the satisfaction of the University. Because it was reasonable to believe the ability to maintain the high standards of scholarship and creativity required of tenured faculty might decline after age 70, the Legislature allowed the University to require a member of the faculty over that age to demonstrate, *year-by-year*, that he or she could still perform at a high level, a requirement not permitted to be imposed on other retirement age employees. In other words, section 12942, subdivision (a) relieves the University of the burden of showing that an elderly member of the tenured

---

[4]The University claims its discretion is constrained by the amendment in that the statute now requires it to promulgate a policy relating to reemployment of tenured faculty members at retirement age. This "constraint" is meaningless, however, if, as the University concomitantly insists and the trial court found, the substance of the policy that must be promulgated is left entirely to the University.

faculty should be deprived of tenure for good cause[5] and shifts to such a person the burden of regularly demonstrating continuing competence.

Contrary to the University's claim, this interpretation is not inconsistent with the legislative history. The 1983 amendment to section 12942 was enacted as part of Assembly Bill No. 398 (Stats. 1983, ch. 666, p. 2614 et seq.), a comprehensive age discrimination measure that amended many other statutes as well. As originally introduced, the bill would simply have repealed the existing version of section 12942 permitting mandatory retirement of tenured faculty. The University opposed this provision and urged the author, Assemblyman Peter Chacon, to adopt language from the Vermont Fair Employment Practices Act authorizing the mandatory retirement of tenured professors at age 70 but providing that "[a]ny employee whose tenure contract is terminated *may, in the discretion of the institution,* be allowed to continue in the employ of the institution on a nontenured basis." (Italics added.) The University points to the fact that in remarks on the floor of the Assembly in support of Assembly Bill No. 398, Assemblyman Chacon stated: "I have also agreed to accept the so-called 'Vermont' amendment, that would allow colleges and universities to mandatorily retire professors under their own policy, provided that there be provisions for rehiring on a year-to-year basis." According to the University, this statement demonstrates not only that "the author of the legislation believed that institutions of higher education had the discretion to refuse to reemploy retired professors, even if they were able to continue working," but that "[t]he Legislature wholly embraced these sentiments." We cannot agree with either claim.

While it is true that courts inquiring into legislative purpose give consideration to statements made by the sponsor of a bill (see, e.g., *Galvan v. Press* (1954) 347 U.S. 522, 525-527 [98 L.Ed. 911, 918-920, 74 S.Ct. 737]; *Mattox v. F.T.C.* (5th Cir. 1985) 752 F.2d 116, 120-121), the rule that legislative intent may be inferred from the statement of the sponsor only applies to a sponsor's statement that is itself unambiguous. "Isolated remarks by the sponsor of a bill that are ambiguous are not sufficient to demonstrate [legislative] intent." (2A Sutherland, Statutory Construction (5th ed. 1994 supp.) § 48.15, p. 74, citing *Arkansas State Bank Commissioner v. Resolution Trust Corp.* (8th Cir. 1990) 911 F.2d 161, 175, which in turn cites *Weinberger v. Rossi* (1982) 456 U.S. 25, 35 [71 L.Ed.2d 715, 723-724, 102 S.Ct. 1510].) Assemblyman Chacon's statement is no clearer than the measure it describes. The statement—which refers to the bill's requirement "that there

---

[5]Appellants point out that Standing Order No. 103.9 provides that "The termination of a continuous tenure appointment . . . shall be only for good cause, after the opportunity for a hearing before the properly constituted advisory committee of the Academic Senate . . . ."

be provisions for rehiring on a year-to-year basis"—certainly does not show, as the University claims, that "the author of the legislation believed that institutions of higher education had the discretion to refuse to reemploy retired professors, even if they were able to continue working"; still less does it show that any other member of the Legislature held such a view.

The principle that legislative intent may be inferred from the statements of a sponsor of a bill also "only applies where the statement is consistent with the statutory language and other legislative history." (2A Sutherland, Statutory Construction, *supra*, § 48.15, p. 74, citing *DeVargas* v. *Mason & Hanger-Silas Mason Co., Inc.* (10th Cir. 1990) 911 F.2d 1377, 1387.) ▮▮ Unlike the Vermont statute, subdivision (a) of section 12942 does *not* say that re-employment after termination of a tenure contract shall be left to "the discretion of the institution." Accordingly, there is no basis in our statute upon which to infer an intent to confer virtually unfettered discretion upon the University. Considering the purpose of the Fair Employment and Housing Act, of which the statute is part, and because the 1983 amendment would be meaningless if not construed to limit the unbounded discretion the University previously possessed, we think the language is more compatible with an intention to actually "permit"—i.e., to require—reemployment on a year-to-year basis of tenured members of the faculty over the age of 70 whose continuing competence is annually established.

This interpretation is consistent with the meaning ascribed to section 12942, subdivision (a) by the Trustees of the California State University. As noted in *Webster* v. *Trustees of Cal. State University* (1993) 19 Cal.App.4th 1456 [24 Cal.Rptr.2d 150], "[t]he trustees' regulations provide that a tenured professor who reaches 70 years of age shall have the right to continue teaching only if, upon the professor's timely request, he is certified annually by the president of the particular university. (Cal. Code Regs., tit. 5, §§ 43660, 43661.) Such certification 'shall be granted to the tenured faculty member whose job performance is standard or above.' (§ 43663, subd. (d).)." (19 Cal.App.4th at p. 1460, fn. omitted.) Moreover, the court in *Webster* suggests that section 12942, subdivision (a) denies employers the degree of discretion claimed by the University in the present case. As stated in *Webster*, "[t]he statute permits a wide range of responses, from a full continuation of tenure beyond age 70 to a system with annual reviews at which the employee must 'demonstrate the ability to do' his or her job." (19 Cal.App.4th at p. 1461.) The court in *Webster* did not need "to pass upon the outer limits of any policy establishing a less-vested type of posttenure employment," as we do, because, unlike the Regents of the University, "[t]he trustees have in fact adopted a clear policy that is much closer to the

'unlimited tenure' end of the scale than the 'not vested' end of the scale." (*Ibid.*)

We conclude that the complaint adequately states a cause of action under section 12942. Accordingly, the judgment is reversed.

Smith, J., and Phelan, J., concurred.

A petition for a rehearing was denied June 22, 1994, and respondent's petition for review by the Supreme Court was denied September 7, 1994. Werdegar, J., did not participate therein.