82 Cal.Rptr.2d 294 (1999)
69 Cal.App.4th 1361
Destinni Ann MARDESICH, Plaintiff and Appellant,
v.
CALIFORNIA YOUTHFUL OFFENDER PAROLE BOARD et al. Defendants and Respondents.
No. B120658.
Court of Appeal, Second District, Division Six.
February 16, 1999.
Review Denied May 26, 1999.[*]
*296 Law Offices of Roger J. Rosen, Los Angeles, and Ben Pesta, for Plaintiff and Appellant.
Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Peter J. Siggins, Senior Assistant Attorney General, Darrell L. Lepkowsky, Supervising Deputy Attorney General, and Robert F. Helfand, Deputy Attorney General, for Defendants and Respondents.
STEVEN J. STONE, J.[*]
Destinni Ann Mardesich appeals the summary denial of her petition for writ of administrative mandamus which challenged an order of the Youthful Offender Parole Board (Board) returning her from the California Youth Authority (CYA) to the Orange County Superior Court for commitment to state prison.
We hold that because the Board's decision directly affected a vested fundamental right, the trial court should have exercised its independent judgment in reviewing the Board's decision. The trial court's failure to do so precludes meaningful review by us. We reverse and remand the matter for reconsideration in light of the appropriate trial court review standard.

FACTS[1] AND PROCEDURAL HISTORY
On September 3, 1991, 17-year-old Ryan Lo and 19-year-old Jonathan Freshour murdered Damian McKenna, Mardesich's former boyfriend and father of their child, L. Because she feared McKenna would seek custody of L., Mardesich told Lo and Freshour that he had abused and threatened her and the child. She was present when they lured McKenna to a remote area in Orange County. Lo shot McKenna twice in the head and then smashed his head with a rock. Mardesich was then 16 years old.
Mardesich was tried as an adult in Orange County and convicted after a court trial of first degree murder. (Pen.Code, §§ 187, subd. `(a), 189.) The court also found true the allegation that she was personally armed with a firearm during the commission of the crime. (Pen.Code, § 12022, subd. (a)(1).)
The court referred Mardesich to CYA for an evaluation and report concerning her amenability for commitment to CYA. (Welf. & Inst.Code, § 707.2.)[2] Over the strenuous objections of the Orange County Sheriff and District Attorney, CYA found Mardesich amenable to its treatment and training. On April 19, 1993, the trial court committed Mardesich to CYA for a term of 26 years to life, and she was transferred to the Ventura School on September 24, 1993.
Approximately two years later, on September 12, 1995, Mardesich came before the Board for an annual review. The Board acknowledged her progress in therapy, noted the need for continued treatment, and confirmed its 1993 order. The following year, however, the Board advised Mardesich it was considering returning her to court for resentencing pursuant to section 1737.1.[3]
*297 A hearing before the full Board was conducted September 18, 1996. The Board reviewed a psychological evaluation by Edward Daube, Ph.D., Mardesich's assigned therapist. Dr. Daube reported that Mardesich had failed to complete standard psychological tests and had much work to complete in individual therapy. He complained she was misleading and evasive, had not benefited significantly from therapy and had made little progress in a year. Dr. Daube concluded, "Based on all of the above, it is felt that [Mardesich], at the present time, is not treatable.... When she decides that treatment, growth, and change are important to her, there are numerous issues which can and should be addressed."
In contrast to Dr. Daube's unfavorable assessment, the case report prepared by two parole agents and a program administrator assigned to Mardesich's case recommended that she remain at CYA. The report described positive steps Mardesich had taken in group counseling and her success at overcoming some significant psychological problems. CYA staff expressed optimism that if given an opportunity to meet with a female therapist, as Mardesich had requested, she would begin to make progress in individual therapy.
Program administrator Susan Brown addressed the Board and requested that Mardesich be given one more year to establish whether she could benefit from CYA. She reported conversations with Dr. Daube concerning his evaluation in which he "emphasized to me that whatto pay attention to when he says at the present time that she is not treatable. At the present time. He did not mean to make a statement that she was untreatable purely...." Despite the recommendation of CYA staff, the Board ordered Mardesich returned to the court for resentencing.
Mardesich filed an administrative appeal supported by new documents, including her typewritten statement, a letter from her former treating psychologist, a new psychological evaluation, and commendations for work at the Ventura School. Although these documents were considered at the hearing on Mardesich's administrative appeal, conducted on August 19, 1997, the Board refused to consider a draft of a favorable case report prepared in anticipation of Mardesich's 1997 annual review. The Board denied the administrative appeal, stating, "FBEB [Full Board En Banc] thoroughly reviewed all information up to the 10-25-96 FBEB hearing. The information was re-evaluated at today's hearing and the FBEB confirmed the FBEB decision of 10-25-96 to return the case to court pursuant to WIC 1737.1."
Mardesich then filed a petition for administrative mandamus with the Orange County Superior Court, contending the weight of the record does not support a finding she is "incorrigible" or "incapable of reformation." Venue was transferred to Ventura County, and on March 2, 1998, the trial court summarily denied the writ. This appeal ensued.

DISCUSSION
The Legislature has granted the Board the authority to determine whether persons committed to CYA can benefit from its services. (In re Owen E. (1979) 23 Cal.3d 398, 404, 154 Cal.Rptr. 204, 592 P.2d 720.) The Board is authorized, under certain circumstances, to reject persons it deems unsuitable, and to return inmates to the court of commitment for redisposition by the court. (§§ 1719, 1731.5, 1737.1.)
When a person such as Mardesich challenges the adjudicatory administrative action of a state-level agency of legislative origin such as the Board, an administrative mandamus proceeding under Code of Civil Procedure section 1094.5 is an appropriate remedy. (See McGill v. Regents of University of California (1996) 44 Cal.App.4th 1776, 1785, 52 Cal.Rptr.2d 466.) Because Mardesich seeks judicial review of "[a] final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer," she properly sought mandamus review in the trial court. (Code Civ. Proc, § 1094.5; see also Cal. Administrative Mandamus (Cont.Ed.Bar 2d ed. 1989) § 1.4, p. 5.)
*298 Accordingly, review of the Board's decision "extend[s] to the questions whether the [Board] has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the [Board] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc, § 1094.5, subd. (b).)
Mardesich contends the Board abused its discretion because its decision is not based on substantial evidence. The parties dispute the appropriate test to be used by the superior court in such a case. Both rely on Code of Civil Procedure section 1094.5, subdivision (c). That statute provides that some administrative orders or decisions are reviewed using the independent judgment standard. Under that test, an abuse of discretion is established when the court, exercising its independent judgment on the evidence, "determines that the findings are not supported by the weight of the evidence." (Ibid.) Other decisions are reviewed for substantial evidence. Where this test applies, ah "abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Ibid; accord, In re Powell (1988) 45 Cal.3d 894, 903, 248 Cal.Rptr. 431, 755 P.2d 881.)
Whether a trial court must exercise independent review depends on whether "the order or decision of the agency substantially affects a fundamental vested right." (Strumsky v. San Diego County Employees Retirement Assn. (1974) 11 Cal.3d 28, 32, 112 Cal.Rptr. 805, 520 P.2d 29; see also Bixby v. Pierno (1971) 4 Cal.3d 130, 144-146, 93 Cal. Rptr. 234, 481 P.2d 242.) That question is determined on a case-by-case basis. (Bixby, supra, at p. 144, 93 Cal.Rptr. 234, 481 P.2d 242.) As stated by our Supreme Court in Strumsky, supra, at page 34, 112 Cal.Rptr. 805, 520 P.2d 29: "When an administrative decision affects a right which has been legitimately acquired or is otherwise Vested,' and when that right is of a fundamental nature from the standpoint of its economic aspect or its `effect ... in human terms and the importance... to the individual in the life situation,' then a full and independent judicial review of that decision is indicated because `[t]he abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction.' [Citation.]"
Mardesich asserts that her right to remain at CYA implicates a vested, fundamental right, compelling the trial court's independent review of the Board's action. We agree.
When Mardesich was sentenced in 1993, a minor found unfit for juvenile court and convicted of murder could be committed to CYA. (§ 1731.5.) Such a commitment provides a substantial benefit to the minor. There is a significant difference between incarceration in prison and incarceration at a Youth Authority facility, "both in terms of conditions of restraint and in length of confinement." (People v. Rocha (1982) 135 Cal.App.3d 590, 596, 186 Cal.Rptr. 132.) Incarceration in prison satisfies the primary purpose of punishing criminal behavior. (Ibid.) "The mission of the Authority, on the other hand, is not retribution but to protect society by rehabilitation." (Ibid.; see also In re Myresheia W. (1998) 61 Cal.App.4th 734, 740-741, 72 Cal.Rptr.2d 65.) The intended effect of the court's commitment order was that Mardesich would receive the benefit of CYA diagnostic and rehabilitative services.
Nevertheless, a sentencing court's discretion to commit a minor to CYA is subject to being overturned, in a sense, by CYA officials. CYA is required to accept only those persons it believes might materially benefit from its reformatory and educational discipline, and for whom it has adequate facilities to provide such care. (§ 1731.5.) If CYA declines to accept a prospective inmate, the inmate is returned to superior court for resentencing and is entitled to minimal due process protections. (People v. Rocha, supra, 135 Cal.App.3d at pp. 594-595, 186 Cal. Rptr. 132.)[4]
*299 Once the inmate has been committed to and accepted by CYA, however, a ward may be returned to superior court for sentencing to state prison only if the Board finds her to be "incorrigible" or an "improper person" or "incapable of reformation." (§ 1737.1; Cal.Code Regs., tit. 15, § 4178.) Upon return to adult court, the trial court has no discretion except to "commit the person to a state prison or sentence him or her to a county jail as provided by law for punishment of the offense of which he or she was convicted." (§ 1737.1; People v. Lo, supra, 42 Cal.App.4th at p. 203, 49 Cal.Rptr.2d 594.)
The effect of the Board's decision to return Mardesich to adult court was that she will be sentenced to state prison for 26 years to life and will not be eligible for parole for many years. (See, e.g., People v. Morales (1992) 5 Cal.App.4th 917, 930, fn. 4, 7 Cal.Rptr.2d 358 [an individual sentenced to 25 years to life is eligible for parole in 16 2/3 years].) Had the Board confirmed her prior placement, Mardesich would have continued to receive the benefit of the trial court's sentence and would have expected to be released from custody within a few years, as she had anticipated from the moment she began her incarceration at CYA. Given the dramatic difference in the potential length and nature of incarceration, and considering the Board's decision from the standpoint of its "`effect... in human terms and the importance ... to [Mardesich] in [this] life situation'" (Strumsky v. San Diego County Employees Retirement Assn., supra, 11 Cal.3d at p. 34, 112 Cal.Rptr. 805, 520 P.2d 29), the Board's decision must be deemed to directly affect her fundamental vested rights. Once in the world of juvenile justice, the inmate has a vested fundamental right to its rehabilitative environment. Review of a decision to remove the inmate to the world of adult punishment requires the exercise of independent judgment.
We do not intend to imply any limitation on the Board's statutory power to grant or revoke parole, and its discretion to reject a judicially ordered inmate. (§§ 1719, 1723, 1731.6, subd. (b).) But the Board's power to reject an inmate is distinct from the inmate's right to continued placement, where, as here, she has resided at CYA for several years and participated in the rehabilitative programs with the expectation of release upon her 25th birthday.
Our conclusion is supported by a review of other administrative proceedings which have been held to involve vested fundamental rights, including (i) suspension or revocation of drivers' licenses (Berlinghieri v. Department of Motor Vehicles (1983) 33 Cal.3d 392, 398, 188 Cal.Rptr. 891, 657 P.2d 383; Elizabeth D. v. Zolin (1993) 21 Cal.App.4th 347, 25 Cal.Rptr.2d 852); (ii) matters relating to welfare and pension benefits (O'Connor v. State Teachers' Retirement System (1996) 43 Cal.App.4th 1610, 1620, 51 Cal.Rptr.2d 540; Strumsky v. San Diego County Employees Retirement Assn., supra, 11 Cal.3d 28, 112 Cal.Rptr. 805, 520 P.2d 29; Harlow v. Carleson (1976) 16 Cal.3d 731, 129 Cal.Rptr. 298, 548 P.2d 698); (iii) denial of applications for public assistance (Frink v. Prod (1982) 31 Cal.3d 166, 180, 181 Cal.Rptr. 893, 643 P.2d 476; Cooper v. Kizer (1991) 230 Cal.App.3d 1291, 282 Cal.Rptr. 492); (iv) taking of property by local land use regulations (Hensler v. City of Glendale (1994) 8 Cal.4th 1, 16, 32 Cal.Rptr.2d 244, 876 P.2d 1043); (v) personnel decisions of local government or the California State University and College system (Kazensky v. City of Merced (1998) 65 Cal. App.4th 44, 51-52, 76 Cal.Rptr.2d 356; Webster v. Trustees of Cal. State University (1993) 19 Cal.App.4th 1456, 24 Cal.Rptr.2d 150; Richardson v. Board of Supervisors (1988) 203 Cal.App.3d 486, 493, 250 Cal.Rptr. 1); and (vi) actions affecting employment (Hughes v. Board of Architectural Examiners (1998) 17 Cal.4th 763, 788-789, 72 Cal. Rptr.2d 624, 952 P.2d 641).[5]
*300 This case presents a unique situation. Unlike traditional mandamus proceedings which affect pecuniary or property interests, the Board's decision affects Mardesich's liberty. Her right to remain at CYA once she was committed there by the trial court and accepted by CYA authorities is at least as significant to her as the right to drive a vehicle, collect welfare benefits or retain employment.
The decision by the Board to return Mardesich to adult court will dramatically affect the nature of her sentence and essentially extends her release date by many years. It is therefore unlike a parole revocation proceeding, which affects only a potential right to early release (In re Powell, supra, 45 Cal.3d at p. 903, 248 Cal.Rptr. 431, 755 P.2d 881, relying on In re Fain (1976) 65 Cal.App.3d 376, 135 Cal.Rptr. 543), or a transfer from the California Rehabilitation Center to the Department of Corrections, which affects only the location of confinement. (People v. Toscano (1977) 69 Cal. App.3d 140, 137 Cal.Rptr. 893.)
The trial court should have applied an independent judgment standard of review. Instead, the court summarily denied Mardesich's petition for writ of administrative mandamus. The trial court's failure to apply the appropriate standard of review precludes meaningful review of the merits of this appeal. "This is so because on appeal from a judgment in a case where the trial court is required to exercise its independent judgment, our review of the record is limited to a determination whether substantial evidence supports the trial court's conclusions and, in making that determination, we must resolve all conflicts and indulge all reasonable inferences in favor of the party who prevailed in the trial court. [Citations.] It follows that where the trial court has failed to perform its duty, we are unable to perform ours...." (Barber v. Long Beach Civil Service Com. (1996) 45 Cal.App.4th 652, 659-660, 53 Cal.Rptr.2d 4.)
The record in this case reveals conflicting evidence about whether Mardesich could continue to benefit from treatment at CYA. It is the trial court's responsibility to weigh this evidence, to consider relevant evidence of events which have transpired after the original hearing (Department of Parks & Recreation v. State Personnel Bd. (1991) 233 Cal. App.3d 813, 836, 284 Cal.Rptr. 839) and to consider whether the Board's decision was based upon the merits of her case considering the strong recommendation from CYA staff that Mardesich remain at Ventura School for at least another year.
The judgment is reversed and the matter is remanded to the trial court with directions to reconsider Mardesich's petition for writ of mandate under the independent standard of review.
YEGAN, Acting P.J, and COFFEE, J, concur.
NOTES
[*] Kennard, J., dissented.
[*] Retired Presiding Justice, Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] Some of these facts were also set forth in the Fourth District Court of Appeal's decision in People v. Lo (1996) 42 Cal.App.4th 189, 49 Cal. Rptr.2d 594, involving appellant's codefendant, Ryan Lo.
[2] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.
[3] Section 1737.1 provides, in relevant part, "Whenever any person who has been convicted of a public offense in adult court and committed to and accepted by the Youth Authority appears to the Youthful Offender Parole Board, either at the time of his or her first appearance before the board or thereafter, to be an improper person to be retained by the Youth Authority, or to be so incorrigible or so incapable of reformation under the discipline of the Youth Authority as to render his or her detention detrimental to the interests of the Youth Authority and the other persons committed thereto, the board may order the return of such a person to the committing court. The court may then commit the person to a state prison or sentence him or her to a county jail as provided by law for punishment of the offense of which he or she was convicted."
[4] The question presented in Rocha was whether a prospective CYA inmate had a due process right to an administrative hearing before the agency to challenge his rejection, and if so, what procedural protections should be afforded. (135 Cal.App.3d at p. 595, 186 Cal.Rptr. 132.) Here, Mardesich was afforded a hearing and we must determine what standard of review the trial court must use in assessing whether CYA abused its discretion. Rocha did not address that issue.
[5] Compare the following cases which have been held not to involve vested fundamental rights: (i) decisions of the State Personnel Board (Shelly v. State Personnel Bd. (1975) 15 Cal.3d 194, 217, fn. 31, 124 Cal.Rptr. 14, 539 P.2d 774); (ii) decisions of the Workers' Compensation Appeals Board (Freedom Newspapers, Inc. v. Superior Court (1986) 186 Cal.App.3d 1102, 1107-1108, 231 Cal.Rptr. 189); (iii) a school district's decision not to rehire a probationary teacher (Turner v. Board of Trustees (1976) 16 Cal.3d 818, 824, 129 Cal.Rptr. 443, 548 P.2d 1115); (iv) decisions of the New Motor Vehicles Board to revoke an automobile dealer's franchise (Automotive Management Group, Inc. v. New Motor Vehicle Bd. (1993) 20 Cal.App.4th 1002, 1009, 24 Cal.Rptr.2d 904); and (v) a planning commission's initial denial of a conditional use permit (Malibu Mountains Recreation, Inc. v. County of Los Angeles (1998) 67 Cal.App.4th 359, 367, 79 Cal.Rptr.2d 25).