170 Cal.App.4th 1574 (2009)
TERRY QUARRY et al., Plaintiffs and Appellants,
v.
DOE 1, Defendant and Respondent.
No. A120048.
Court of Appeals of California, First District, Division Four.
February 10, 2009.
*1578 Zalkin & Zimmer, Irwin M. Zalkin, Michael H. Zimmer, Devin M. Storey and Michael J. Kinslow for Plaintiffs and Appellants.
Foley & Lardner, Stephen A. McFeely, Tami S. Smason and Courtney R. Henning for Defendant and Respondent.

OPINION
RIVERA, J.
Six brothers claim they were sexually abused by a Catholic priest in the 1970's, when they were children. They sued defendant Doe I in 2007 for damages due to adult-onset psychological injuries allegedly caused by that abuse.[1] When they sued, they ranged in age from 43 to 49. They alleged they did not discover until 2006 that the cause of their adulthood psychological injuries was the childhood sexual abuse.
The Bishop demurred to the complaint. He argued that plaintiffs' causes of action were barred under earlier limitations periods and that later expansions of the statute of limitations did not revive their lapsed claims. Plaintiffs *1579 contended that the current statute (Code Civ. Proc., § 340.1) applied, pursuant to which their claims did not accrue until 2006, when they discovered the cause of their injuries. The trial court sustained the Bishop's demurrer and dismissed the complaint.
(1) We reverse and hold that the prior limitations periods did not extinguish claims that had not accrued while those limitations were in effect, and that the timeliness of the complaint is to be measured by the statute in effect at the time the complaint was filed.[2]

I. BACKGROUND
On March 2, 2007, plaintiffs filed a complaint against the Bishop alleging that they suffered childhood sexual abuse in 1972 and 1973 at the hands of a priest employed by the Bishop. They alleged that they developed various psychological coping mechanisms that prevented them from ascertaining the causal connection between their childhood sexual abuse and the adult-onset psychological injuries. As a result, they did not discover that their injuries were the result of the sexual abuse until within the year preceding the filing of the complaint. The Bishop demurred to the complaint, arguing that the complaint was barred by the statute of limitations of Code of Civil Procedure[3] section 340.1. The trial court sustained the demurrer with leave to amend.
Plaintiffs filed a first amended complaint on July 12, 2007. They alleged that they did not discover the wrongfulness of the abuse they suffered until the latter half of 2005 and did not discover that their psychological injuries were caused by the molestation until March 2006. The Bishop again demurred. He contended that plaintiffs' claims were barred by the statutes of limitations in effect prior to 2003, were revived for a one-year period (2003) by section 340.1, subdivision (c), and after 2003 were again time-barred. The Bishop also argued that plaintiffs could not rely on the common law delayed discovery rule because it had been abrogated by the statute.
The trial court sustained the demurrer without leave to amend, and entered judgment dismissing the complaint with prejudice.

*1580 II. DISCUSSION

A. Standard of Review and Principles of Statutory Construction

We here review the narrow question of whether a complaint is time-barred by the terms of a statute and the statute's prior iterations. No factual issues are in dispute. After dismissal is entered on a demurrer sustained without leave to amend, we must accept as true all of the facts alleged in the complaint. (Marshall v. Gibson, Dunn & Crutcher (1995) 37 Cal.App.4th 1397, 1403 [44 Cal.Rptr.2d 339].) Accordingly, our review is de novo.
"`[I]t is well settled that the interpretation and application of a statutory scheme to an undisputed set of facts is a question of law [citation] which is subject to de novo review on appeal.'" (Bodell Construction Co. v. Trustees of Cal. State University (1998) 62 Cal.App.4th 1508, 1515 [73 Cal.Rptr.2d 450] (Bodell).) In cases "involving matters of law, the appellate court is not bound by the trial court's decision, but may make its own determination. [Citations.] Statutory construction is such a question of law for the courts . . . ." (Evans v. Unemployment Ins. Appeals Bd. (1985) 39 Cal.3d 398, 407 [216 Cal.Rptr. 782, 703 P.2d 122].)
(2) "The applicable canons of statutory construction which guide our interpretation of [statutes] are also well settled. `The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.]' [Citation.] In determining that intent, we first examine the words of the statute itself. [Citation.] Under the so-called `plain meaning' rule, courts seek to give the words employed by the Legislature their usual and ordinary meaning. [Citation.] If the language of the statute is clear and unambiguous, there is no need for construction. [Citation.]" (Bodell, supra, 62 Cal.App.4th at pp. 1515-1516; see also Wolski v. Fremont Investment & Loan (2005) 127 Cal.App.4th 347, 351 [25 Cal.Rptr.3d 500] [where statutory language is unequivocal, "`we presume the Legislature meant what it said, and the plain meaning of the statute governs'"].) "If, however, the statutory language lacks clarity, we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. In such situations, we strive to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statute's general purposes." (In re Travis W. (2003) 107 Cal.App.4th 368, 371 [132 Cal.Rptr.2d 135].)
*1581 With these principles in mind, we turn to our examination of the statute's history and meaning.

B. The Statute and Its Amendments

Section 340.1 was enacted in 1986. (Stats. 1986, ch. 914, § 1, pp. 3165-3166.) It sets forth the statute of limitations for an action seeking damages suffered as a result of childhood sexual abuse. Prior to 1987, the limitations period for such claims was one year from the date of the wrongful act, as then prescribed by former section 340, subdivision (3) (Stats. 1982, ch. 517, § 97, pp. 2334-2335), or one year after reaching the age of majority, pursuant to section 352, subdivision (a) (Stats. 1986, ch. 1161, § 1, p. 4148). The 1986 statute extended the limitations period to three years, but only for sexual abuse by a relative or household member. (Dutra v. Eagleson (2006) 146 Cal.App.4th 216, 222 [52 Cal.Rptr.3d 788].)
In 1990, the Legislature amended section 340.1, extending the limitations period to "within eight years of the date the plaintiff attains the age of majority or within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse, `whichever occurs later.'" (Lent v. Doe (1995) 40 Cal.App.4th 1177, 1182 [47 Cal.Rptr.2d 389] (Lent); see Stats. 1990, ch. 1578, § 1, pp. 7550-7552.) The amendment also expanded section 340.1 to govern actions against all perpetrators, not just household or family members. (Stats. 1990, ch. 1578, § 1, pp. 7550-7552.) The new provision applied to "`any action commenced on or after January 1, 1991.'" (David A. v. Superior Court (1993) 20 Cal.App.4th 281, 284, fn. 5 [24 Cal.Rptr.2d 537] (David A.).)
In 1993, Division Two of the First District Court of Appeal construed the above quoted phrase to mean that the 1990 amendment was intended to apply prospectively only and did not revive any claims that had become time-barred under prior law. (David A., supra, 20 Cal.App.4th at pp. 286-288.) In response, the Legislature adopted amendments in 1994 making explicit its intention to revive claims that had lapsed under prior limitations periods. (Former § 340.1, subd. (o); Stats. 1994, ch. 288, § 1, p. 1930; currently § 340.1, subd. (r).)[4]
*1582 The 1990 and 1994 amendments applied only to perpetrators and not to entities that employed or otherwise supervised a perpetrator. (Former § 340.1, subd. (b); Stats. 1990, ch. 1578, § 1, pp. 7550-7551; Stats. 1994, ch. 288, § 1, p. 1928.) "Effective 1998, that defect was remedied when the Legislature amended section 340.1, subdivision (a) to include causes of action for sex abuse against persons or entities other than the perpetrator." (Hightower v. Roman Catholic Bishop of Sacramento (2006) 142 Cal.App.4th 759, 765-766 [48 Cal.Rptr.3d 420] (Hightower); see Stats. 1998, ch. 1032, § 1.) Such claims, however, had to be brought before the plaintiff's 26th birthday. (Former § 340.1, subd. (b); Stats. 1998, ch. 1032, § 1; currently §340.1, subd. (b)(1).) In 1999, the Legislature again amended section 340.1 to provide that the 1998 amendments to subdivision (a) "shall apply to any action commenced on or after January 1, 1999, . . . including any action or causes of action which would have been barred by the laws in effect prior to January 1, 1999." (Former § 340.1, subd. (s); see Stats. 1999, ch. 120, § 1.)
In 2002, the Legislature further expanded the limitations period of section 340.1[5] as against certain nonperpetrator defendants by removing the cutoff date of the 26th birthday. (§ 340.1, subd. (b); Stats. 2002, ch. 149, § 1.) Accordingly, the statute now permits an action against a nonperpetrator defendant to be brought within three years of discovering that the psychological injuries were caused by the childhood abuse (§ 340.1, subd. (a)) if that defendant "knew or had reason to know, or was otherwise on notice, of any unlawful sexual conduct by an employee . . . or agent, and failed to take reasonable steps, and to implement reasonable safeguards, to avoid acts of unlawful sexual conduct in the future by that person, including, but not limited to, preventing or avoiding placement of that person in a function or environment in which contact with children is an inherent part of that function or environment" (id., subd. (b)(2)). The amendment also revived for a period of one year, commencing January 1, 2003, any claims "permitted to be filed [under the amendment] that would otherwise be barred as of January 1, 2003, solely because the applicable statute of limitations has or had expired . . . ."[6] (§ 340.1, subd. (c).)
(3) This is the current state of the law, and is the law that was in effect when the complaint was filed. The core statutory provisions are succinctly summarized in Aaronoff v. Martinez-Senftner (2006) 136 Cal.App.4th 910 [39 Cal.Rptr.3d 137]. "Section 340.1 provides that an action for recovery of damages suffered as a result of childhood sexual abuse must be commenced within three years of discovering that injury occurred as the result of the *1583 abuse, or within eight years after the plaintiff attains the age of majority, whichever is later. (§ 340.1, subd. (a).) This limitations provision applies whether the defendant is the perpetrator of the abuse, or a third party whose liability stems from a negligent or intentional act which was the legal cause of the abuse that resulted in the injury. (§ 340.1, subd. (a)(1)-(3).) [¶] In the case of a third party defendant, the action must be commenced before the plaintiff's 26th birthday unless the third party defendant `knew or had reason to know, or was otherwise on notice, of any unlawful sexual conduct by an employee . . . or agent, and failed to take reasonable steps, and to implement reasonable safeguards, to avoid acts of unlawful sexual conduct in the future by that person' in which case the action must be commenced within three years of discovering the injury was caused by the abuse. (§ 340.1, subd. (b)(2).) The one-year revival period for the year 2003 applies only to these actions, reviving any such claim previously barred by the statute of limitations, unless the claim was litigated to finality on the merits. (§ 340.1, subd. (c).)" (Id. at pp. 919-920.)
The question presented is how to interpret and apply the statute to actions filed after 2003 by plaintiffs who are over the age of 26.

C. Application and Analysis

1. The Parties' Contentions

The parties do not dispute that plaintiffs' claims for injuries from the alleged sexual abuse originally lapsed between 1976 and 1982, when each turned age 19, under the law as it then stood. (Former § 340, subd. 3; Stats. 1973, ch. 20, § 1, p. 32.) The Bishop also concedes that in 1999 all lapsed claims against both perpetrators and third parties were revived by the 1998-1999 amendments to section 340.1, subdivision (a), which applied to "any action commenced on or after January 1, 1999." (Former § 340.1, subd. (s); Stats. 1999, ch. 20, § 1.) The Bishop argues, however, that the age 26 cutoff date for claims against third parties in effect from 1999 to 2003 precluded the revival of plaintiffs' claims because they had already reached age 26 before 1999. According to the Bishop, effective 2003 the Legislature opened a one-year window in which plaintiffs' claims were revived, and because plaintiffs did not commence an action in that time window their claims are now forever barred.
Plaintiffs contend that their claims could not have been barred by the age 26 cutoff because the statute of limitations on their claims did not even begin to run until 2006, when they first discovered their "psychological injury or illness occurring after the age of majority was caused by the sexual abuse." (§ 340.1, subd. (a).) According to plaintiffs, because the timeliness of a *1584 complaint is measured by the limitations period in effect at the time the complaint is filed, their claims are not barred. We agree.

2. Plain Meaning of Section 340.1

The statute is neither ambiguous nor obscure. We need not resort to extrinsic aids for its interpretation because its meaning is plain.
The 1998-1999 amendments to section 340.1 revived all previously lapsed, unadjudicated claims against perpetrators and third parties, and provided for two alternative limitations periods: A claim must be filed (1) within eight years after reaching majority or (2) within three years of discovering that the cause of the psychological injury occurring after the age of majority was the childhood abuse, whichever occurs later (id., subd. (a)); as against third parties, however, the outside limit was age 26 (id., subd. (b)). Thus, under the prior law, any person discovering after age 26 that childhood abuse was the cause of his or her adulthood injuries was barred from suing responsible third parties. Effective 2003, however, the Legislature deleted the age 26 cutoff as against a narrow category of third party defendants who had both the knowledge and the ability to protect against abusive behavior but failed to do so. Anyone discovering that childhood abuse was the cause of their injuries after 2003 could sue thesemore culpabledefendants without regard to the age 26 cutoff. (Ibid.) And, for those who had previously discovered the cause of their injuries but could not sue under the prior law because of the age 26 cutoff (id., subd. (b)(1)), the Legislature offered a one-year window in which they could file their claims (id., subd. (c)).
It therefore follows, and we hold, that under section 340.1 the complaint in this action is not time-barred because plaintiffs have alleged they did not discover the cause of their psychological injuries until 2006. In so holding we respectfully disagree with our colleagues in the Second Appellate District. (Hightower, supra, 142 Cal.App.4th 759.) The court there rejected the same argument made by plaintiffs herethat the delayed discovery rule applies to any cases filed after 2003, even those of persons who are well past the age of 26. The court concluded that with the 2002 amendments, "[t]he Legislature. . . drew a clear distinction between claims that were time-barred and those that were not. Hightower's interpretation would obliterate that distinction by allowing his time-barred claim to take advantage of the new limitations period." (Id. at pp. 767-768.) The court's conclusion in Hightower appears to rest on the premise that all causes of action of persons over age 26those already triggered as well as those not yet discoveredwere extinguished under prior limitations periods. As we explain, we disagree and have concluded, instead, that the 2002 amendments were intended to lift the age 26 cutoff with respect to any complaint commenced on or after its *1585 effective date, so long as the triggering eventthe discovery of the cause of one's injuriesfalls within the limitations period in effect at the time the complaint was filed.
Our reading of section 340.1 follows the plain language of the statute and achieves its overarching purpose "to expand the ability of victims of childhood abuse to sue those responsible for the injuries they sustained as a result of that abuse." (Doe v. City of Los Angeles (2007) 42 Cal.4th 531, 545 [67 Cal.Rptr.3d 330, 169 P.3d 559] (Doe).) As we discuss below, it also comports with general principles relating to the prospective application of enlarged limitations periods, and is supported by the legislative history.

3. Prospective Application of an Enlarged Statute of Limitation

The Bishop argues that section 340.1, subdivision (b)(2), lifting the age 26 cutoff as against certain defendants, cannot apply to plaintiffs' 2007 complaint because their claims were previously barred, and it is impermissible to apply a new law retroactively. The Bishop's contention that this would be an improper retroactive application of a new limitations period appears to rest on two premises: First, that a potential claim is barred by a limitations period in the same manner as a claim that has accrued; and second, that there is only one accrual date for a wrongful act. As explained in Nelson v. Flintkote Co. (1985) 172 Cal.App.3d 727 [218 Cal.Rptr. 562] (Nelson), neither premise is correct.
In Nelson, the plaintiff (Andrew Nelson) was exposed to asbestos at various times beginning in 1949. (Nelson, supra, 172 Cal.App.3d at pp. 729-730.) In September 1976 Nelson was informed by his doctor the he had contracted the disease of asbestosis as a result of that exposure. Despite the diagnosis, Nelson continued working. (Id. at p. 730.)
In 1979 the Legislature enacted section 340.2, a new statute of limitations for persons injured as a result of asbestos exposure. It provided that the time for commencement of such an action "(a) . . . shall be the later of the following: [¶] (1) Within one year after the date the plaintiff first suffered disability. [¶] (2) Within one year after the date the plaintiff either knew, or through the exercise of reasonable diligence should have known, that such disability was caused or contributed to by such exposure. [¶] (b) `Disability'. . . means the loss of time from work as a result of such exposure. . . ." (Ibid.) The new law also made its provisions expressly applicable to "those causes of action which accrued prior to the change in the law . . . and have not otherwise been extinguished by operation of law." (Stats. 1979, ch. 513, § 2, p. 1690.)
Prior to the adoption of section 340.2, asbestos-related personal injury actions were subject to the general one-year statute of limitations contained in *1586 former section 340, subdivision 3 (Stats. 1973, ch. 20, § 1, p. 32), and the limitations period commenced at the time of the wrongful act. (Nelson, supra, 172 Cal.App.3d at pp. 730-731.)[7] Nelson, while still working, filed his complaint for damages in 1981. (Nelson, at pp. 730-731.)
(4) The defendants argued that because Nelson did not file suit within one year of learning that he had been injured due to asbestos exposure, his action was time-barred, because it had been "`extinguished by operation of law.'" (Nelson, supra, 172 Cal.App.3d at p. 731.) The Court of Appeal disagreed stating, "[t]here is no automatic magical extinguishment of a cause of action by the mere passage of time. A statute of limitations is an affirmative defense which must be pleaded by a defendant and ruled on by a court. Where, as here, a court has not adjudicated the timeliness of the action with reference to section 340, subdivision (3), prior to the effective date of section 340.2, the claim is considered still pending or potential and governed by the changed rules for accrual of section 340.2. [Citations.]" (Id. at p. 732.) The court went on to explain, "[t]he fact that the limitations period under the discovery rule of section 340, subdivision (3), may have expired before section 340.2's more liberal discovery and disability rule became effective and before any complaint was filed does not bar the action since no disability had occurred." (Ibid.) The court concluded, "[s]ince there had been no extinguishment, there is no problem of an impermissible retroactive revival of a barred cause of action impairing defendants' vested rights." (Ibid.) (5) "Moreover, a statute of limitations is procedural; it affects the remedy only, not the substantive right or obligation. [Citation.]" (Id. at p. 733.) "`A statute which is procedural in nature may be given effect as to pending and future litigation even if the event underlying the cause of action occurred before the statute took effect.' [Citation.]" (Ibid.; see also Hamilton v. Asbestos Corp. (2000) 22 Cal.4th 1127, 1138-1145 [95 Cal.Rptr.2d 701, 998 P.2d 403] (Hamilton).)
The same analysis applies here. Because no court has previously adjudicated the timeliness of plaintiffs' action, the claims are considered "still pending or potential and [are] governed by the changed rules for accrual." (Nelson, supra, 172 Cal.App.3d at p. 732.) And, the fact that prior limitations periods may have expired before section 340.1, subdivision (b)(2)'s more liberal discovery rule became effective and before any complaint was filed does not bar plaintiffs' action, because discovery of the cause of plaintiffs' *1587 psychological injuries had not yet occurred. Therefore, there was no "extinguishment [and] there is no problem of an impermissible retroactive revival of a barred cause of action impairing defendant['s] vested rights." (Nelson, at p. 732.) Further, the amendments to section 340.1 affecting the statute of limitations are procedural only; they affect plaintiffs' remedies, not any substantive rights or obligations. As stated in Nelson, a statute procedural in nature "`may be given effect as to pending and future litigation even if the event underlying the cause of action occurred before the statute took effect.' [Citation.]" (Nelson, at p. 733, italics added; see also Romo v. Estate of Bennett (1979) 97 Cal.App.3d 304, 307-308 [158 Cal.Rptr. 635] [new statute of limitations with only prospective application did not bar claims arising out of injury occurring prior to the statute on which claim did not accrue until after the statute was enacted].)
The policy reasoning in Nelson is also instructive. "The state certainly has an interest in protecting innocent asbestosis victims from toxic tortfeasors. Asbestosis may take up to 35 years to develop from first exposure. [Citation.] To ameliorate the harsh application of the one-year statute commencing to run upon the wrongful act in cases involving latent occupational diseases, the courts . . . began to apply a `discovery rule' to section 340, subdivision (3). [Citation.] Meanwhile, with the passage of section 340.2[,] the Legislature codified a more liberal disability plus discovery rule, providing that the limitation period never commences to run for plaintiffs who know they have suffered injury or illness from asbestos exposure until `disability' has occurred. [Citation.] [¶] This delayed accrual rule is more in keeping with the gradually disabling nature of the disease." (Nelson, supra, 172 Cal.App.3d at p. 735.)
Surely, the state has an equal interest in protecting innocent victims of child molestation from responsible tortfeasors. Just like asbestosis, the psychological injury from childhood abuse can take years to reveal itself. The statute itself recognizes that psychological injury from childhood abuse and discovery of its cause can be delayed long past age 26. Prospective application of the expanded limitations period is, therefore, in keeping with the delayed onset of these victims' injuries. It also places the burden of compensation for such injuries on the responsible parties instead of on the victims, their families and the public.[8]

*1588 4. Legislative History and Intent

Although the plain language of the statute dictates the result here, we may look to legislative history for additional support. (Barratt American, Inc. v. City of Rancho Cucamonga (2005) 37 Cal.4th 685, 697 [37 Cal.Rptr.3d 149, 124 P.3d 719].)[9] As the author of the 2002 amendments explained: "`This bill is essential to ensure that victims severely damaged by childhood sexual abuse are able to seek compensation from those responsible. While current law allows a lawsuit to be brought against the perpetrator within three years of discovery of the adulthood aftereffects of the childhood abuse, current law bars any action against a responsible third party entity (such as an employer, sponsoring organization or religious organization) after the victim's 26th birthday. Unfortunately for many victims, their adulthood trauma does not manifest itself until well after their 26th birthday, when some event in their current life triggers remembrance of the past abuse and brings on new trauma. [¶] For example, a 35-year old man with a 13-year old son involved in many community and sporting events, may begin to relive his nightmare of being molested by an older authoritarian figure when he was 13 years old and about to enter puberty. While a lawsuit against the perpetrator is possible, that person may be dead, may have moved away to places unknown, or may be judgment-proof. However, any lawsuit against a responsible third party is absolutely time-barred after the victim passes this 26th birthday. This arbitrary limitation unfairly deprives a victim from seeking redress, and unfairly and unjustifiably protects responsible third parties from being held accountable for their actions that caused injury to victims.'" (Sen. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 1779 (2001-2002 Reg. Sess.) as amended June 17, 2002, pp. 3-4.)
In keeping with this expression of legislative purpose, the Assembly Committee on the Judiciary described the intended effect of the 2002 amendments: "WHO CAN SUE AFTER THE BILL PASSES, AND WHEN: [¶] . . . [¶] Prospective application: People who discover their adulthood trauma from the molestation after the effective date of the bill will have three years from the date the victim discovers or reasonably should have discovered that the adulthood trauma was caused by the childhood abuse." (Assem. Com. on Judiciary, Background Information Worksheet on Sen. Bill No. 1779 (2001-2002 Reg. Sess.) p. 0.)
In sum, the primary purpose of the 2002 amendments was to ameliorate the harsh result of a statute of limitations which precluded abuse victims from *1589 recovering any compensation from the most highly culpable of the responsible third partiesthose who knew of the danger and took no steps to protect children from abuse. It would not effectuate this legislative intent to read the amendments as reimposing the same harsh result on an entire class of victims over the age of 26 who did not discover the cause of their injury until after January 1, 2004, and therefore could not have filed their actions during 2003.
(6) As our Supreme Court has explained, "`[t]he overall goal of section 340.1 is to allow victims of childhood sexual abuse a longer time period in which to bring suit against their abusers. [Citation.] The legislative history makes this abundantly clear. The statute has been amended numerous times since its enactment in 1986, to enlarge the period for filing claims, "`to hold molesters accountable for their behavior so that they are not "off the hook" as soon as their victims reach age 21,'" [citation] [and] to extend the expanded limitations period to actions not just against molesters, but against "any person or entity who owed a duty of care to the plaintiff, where a wrongful or negligent act by that person or entity was a legal cause of the childhood sexual abuse . . ." [citations] . . . . [Citation.] Each time, plaintiffs' access to the courts was expanded.' ([Citation]; see Shirk v. Vista Unified School Dist. (2007) 42 Cal.4th 201, 207-208 [64 Cal.Rptr.3d 210, 164 P.3d 630] [review of the history of § 340.1 from its original enactment in 1986 through its 2002 amendments demonstrates a continual expansion and enlargement of the statute to allow sexual abuse victims to sue perpetrators and nonperpetrator defendants].)" (Doe, supra, 42 Cal.4th at p. 545.) Thus, our reading of the 2002 amendments has the added virtue of advancing the primary purpose behind the statute and its legislative evolution. (Wotton v. Bush (1953) 41 Cal.2d 460, 467 [261 P.2d 256] ["`the objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration in its interpretation'"].)

5. Claims Retroactively Revived by Section 340.1, Subdivision (c)

(7) We have concluded that plaintiffs of all ages who discover the cause of their childhood injuries after 2003 can sue those defendants described in section 340.1, subdivision (b)(2). What purpose, then, is served by the revivor provision of section 340.1, subdivision (c)? Again, the statutory language is clear. Subdivision (c) provides that "any claim for damages [against third parties] that is permitted to be filed [after age 26 against the more culpable third party defendants] that would otherwise be barred as of January 1, 2003, solely because the applicable statute of limitations has or had expired, is revived . . . ." (8) This provision, by its terms, governs those persons who, prior to 2003, discovered their psychological injury was caused by the childhood abuse but could not file suit because their discovery occurred after *1590 they reached the age of 26.[10] The legislative history bears this out. "[T]his bill would provide those victims who discovered their adulthood trauma after age 26, whose action has been barred by the current statute of limitations, a one-year window to bring a case against a third party that otherwise would be time-barred." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1779 (2001-2002 Reg. Sess.) as amended June 6, 2002, p. 7, italics added; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1779 (2001-2002 Reg. Sess.) as amended May 2, 2002, p. 6, italics added.)
(9) Plaintiffs here had no claims to bring that were "barred by the current statute of limitations," because they had not discovered the cause of their psychological injuries prior to 2003. Therefore, plaintiffs' claims are not governed by the one-year window for the filing of time-barred claims, but are governed by the provisions of section 340.1, subdivision (b)(2) in its prospective application.

6. No Improper Splitting of a Cause of Action

In response to questioning at oral argument, the Bishop argued that the statute of limitations began running on plaintiffs' causes of action when the molestation occurred in 1972 and 1973 because actual, appreciable injury is presumed in cases of childhood sexual abuse. Therefore, according to the Bishop, plaintiffs' claims had already accrued and become barred by 1982 at the latest (when the youngest plaintiff turned 19) under the original statute of limitations (former § 340, subd. 3), and could not be revived by the 1999 amendments because at that time all plaintiffs were beyond the age 26 cutoff. Allowing plaintiffs a second accrual date, the Bishop contends, would violate the primary right theory by impermissibly splitting plaintiffs' causes of action. The Bishop mistakenly equates the primary right theory with the statute of limitations.
In Hamilton, the court considered whether a plaintiff could file two separate complaints, each one alleging a different type of injury due to exposure to asbestos. The Court of Appeal had concluded that the second action was time barred reasoning, in part, that filing two lawsuits for injuries from the same exposure impermissibly split plaintiff's cause of action and violated the primary right rule. (Hamilton, supra, 22 Cal.4th at pp. 1145-1146.)
*1591 (10) The Supreme Court reversed, explaining that "[t]he rule against splitting a cause of action is neither an aspect, nor a restatement, of the statute of limitations . . . ." (Hamilton, supra, 22 Cal.4th at p. 1146.) "`The primary right theory has a fairly narrow field of application. It is invoked most often when a plaintiff attempts to divide a primary right and enforce it in two suits. The theory prevents this result by either of two means: (1) if the first suit is still pending when the second is filed, the defendant in the second suit may plead that fact in abatement [citation]; or (2) if the first suit has terminated in a judgment on the merits adverse to the plaintiff, the defendant in the second suit may set up that judgment as a bar under the principles of res judicata [citation].' (Italics added.) Neither of these applications of the rule against splitting a cause of action depends on whether the second action was brought within the period allowed by the statute of limitations. Conversely, application of the statute of limitations does not depend on whether a prior action was brought, or on how it was resolved." (Ibid.)
(11) The court also explained why the plaintiffs' second complaint was not time-barred. A cause of action accrues, "in the sense that it is ripe for suit," when the plaintiff discovers he has a compensable injury. (Hamilton, supra, 22 Cal.4th at p. 1144.) "Before the enactment of section 340.2, that accrual date was also the date of the beginning of the limitations period in cases in which the latent injury or disease arose from exposure to asbestos. [Citation.] But section 340.2 changed that rule, declaring a separate and distinct date for the beginning of the limitations period . . ., i.e., the date of disability as specially defined in the statute. The result, since the enactment of section 340.2, is that although the filing of an action for asbestos-related injury may be said . . . to be an `admission' that the cause of action has accrued in the ripeness sense, it is not an admission that the limitations period of section 340.2 has simultaneously begun. To hold otherwise is to rewrite the statute." (Id. at pp. 1144-1145.)
(12) The same principle applies to section 340.1. Under prior law, a cause of action for sexual abuse accrued and the statute of limitations began to run from the date of the wrongful act. But section 340.1 and its amendments changed that rule, declaring a separate and distinct date for the beginning of a different limitations period, i.e., the date a plaintiff reasonably should have discovered that the cause of his or her psychological injuries was the childhood abuse. (§ 340.1, subd. (a).) Consequently, although a plaintiff can file an action for damages arising out of the molestation based upon the presumed injuries suffered as a child, the delayed discovery statute provides for a new limitations period to begin when the cause of any adult-onset injuries was or should have been discovered.
*1592 Lent provides a similar analysis under an earlier version of section 340.1. In Lent, the plaintiff expressly alleged he had suffered "actual and appreciable injury" when he was abused as a child, and admitted he had not suppressed his memory of the abuse. (Lent, supra, 40 Cal.App.4th at p. 1185.) The defendant argued that these facts precluded the plaintiff from taking advantage of the delayed accrual provisions of section 340.1, subdivision (a). (Lent, at p. 1185.) The court rejected this argument. "[W]hether plaintiff suffered an actual or appreciable injury at the time of the abuse is not relevant to delayed discovery claims made under the present version of section 340.1. [Citations.] Subdivision (a) of section 340.1 could not be more clear: the delayed discovery provisions of section 340.1 relate to injuries occurring after the age of majority. [Citations.]" (Id. at pp. 1185-1186.) "[T]o satisfy delayed discovery plaintiff need only allege the onset of psychological injury or illness after the age of majority and that he commenced his action within three years of the time he discovered or reasonably should have discovered such psychological injury or illness was caused by the childhood sexual abuse. (§ 340.1, subd. (a).)" (Id. at p. 1186.)
(13) Similarly, here, the legal presumption that actionable injury occurs at the time of the molestation (see, e.g., Marsha V. v. Gardner (1991) 231 Cal.App.3d 265, 273 [281 Cal.Rptr. 473]) is not relevant. The current version of the statute expressly provides that the limitations period for adulthood psychological injuries begins when the cause of those injuries is or should have been discovered. There is no impermissible splitting of a cause of action, only a legislative policy decision to allow victims to sue on injuries that are not reasonably discoverable until much later in life.[11]

7. The Common Law Delayed Discovery Rule Was Not Abrogated

Finally, the Bishop contends that common law delayed discovery principles applicable to childhood sexual abuse cases do not survive the later amendments to section 340.1. The trial court ruled that section 340.1 provides the exclusive limitations period for plaintiffs' claims. We disagree.
The Bishop correctly points out that in the original statute, and in connection with the 1990 amendments, the Legislature expressly preserved a plaintiff's right to rely upon the common law delayed discovery principles, *1593 but deleted this savings clause in the 1994 amendments. The Bishop argues this was a "material change in the language of the law" and is, therefore, "presumed to indicate a change in legal rights," citing Dubins v. Regents of University of California (1994) 25 Cal.App.4th 77, 85 [30 Cal.Rptr.2d 336]. We agree with the proposition stated; but it does not necessarily follow that the "change in legal rights" enacted by the 1994 amendments includes an intent to preclude the application of common law delayed discovery principles in childhood sexual abuse cases.
(14) "[W]hen we are urged to find that a statute is intended to silently abrogate an established rule of law, we must heed the Supreme Court's admonition that `it should not "be presumed that the Legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication." [Citation.]' [Citations]." (Ruoff v. Harbor Creek Community Assn. (1992) 10 Cal.App.4th 1624, 1630 [13 Cal.Rptr.2d 755].) Here, the removal of the savings clause in 1994 did not expressly abrogate the common law delayed discovery rule, nor is such necessarily implied. A different construction is at least equally plausible, viz., the amendment having revived all claims that had lapsed under previous limitations periods, thus extending the three-years-from-date-of-discovery period to all plaintiffs, the "savings clause" for the shorter, one-year-from-discovery common law rule became superfluous. Further, the common law delayed discovery rule comes into play in circumstances different from those governed by the delayed discovery provisions of section 340.1. The former arises in situations where the plaintiff repressed the memory of the abuse, or did not understand the wrongfulness of the abuse, until within one year of the filing of the action. (Evans v. Eckelman (1990) 216 Cal.App.3d 1609, 1618-1619 [265 Cal.Rptr. 605] [wrongfulness]; id. at p. 1620 [suppressed memory]; cf. DeRose v. Carswell (1987) 196 Cal.App.3d 1011, 1018-1019 [242 Cal.Rptr. 368] [repressed memory].) Section 340.1, subdivision (a), on the other hand, permits filing within three years of the date the cause of the injuries was or should have been discovered. The two are not inconsistent.
As a practical matter, the generous statutory limitations period leaves few, if any, benefits to be derived from the common law delayed discovery rule. Nevertheless, we decline to read into the Legislature's mere deletion of the savings clause an express intent to preclude its application in all cases.[12]

*1594 III. DISPOSITION
The judgment is reversed.
Ruvolo, P. J., and Sepulveda, J., concurred.

*1595 APPENDIX A

Code of Civil Procedure, Section 340.1
(a) In an action for recovery of damages suffered as a result of childhood sexual abuse, the time for commencement of the action shall be within eight years of the date the plaintiff attains the age of majority or within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse, whichever period expires later, for any of the following actions:
(1) An action against any person for committing an act of childhood sexual abuse.
(2) An action for liability against any person or entity who owed a duty of care to the plaintiff, where a wrongful or negligent act by that person or entity was a legal cause of the childhood sexual abuse which resulted in the injury to the plaintiff.
(3) An action for liability against any person or entity where an intentional act by that person or entity was a legal cause of the childhood sexual abuse which resulted in the injury to the plaintiff.
(b)(1) No action described in paragraph (2) or (3) of subdivision (a) may be commenced on or after the plaintiff's 26th birthday.
(2) This subdivision does not apply if the person or entity knew or had reason to know, or was otherwise on notice, of any unlawful sexual conduct by an employee, volunteer, representative, or agent, and failed to take reasonable steps, and to implement reasonable safeguards, to avoid acts of unlawful sexual conduct in the future by that person, including, but not limited to, preventing or avoiding placement of that person in a function or environment in which contact with children is an inherent part of that function or environment. For purposes of this subdivision, providing or requiring counseling is not sufficient, in and of itself, to constitute a reasonable step or reasonable safeguard.
(c) Notwithstanding any other provision of law, any claim for damages described in paragraph (2) or (3) of subdivision (a) that is permitted to be filed pursuant to paragraph (2) of subdivision (b) that would otherwise be barred as of January 1, 2003, solely because the applicable statute of limitations has or had expired, is revived, and, in that case, a cause of action may be commenced within one year of January 1, 2003. Nothing in this *1596 subdivision shall be construed to alter the applicable statute of limitations period of an action that is not time barred as of January 1, 2003.
(d) Subdivision (c) does not apply to either of the following:
(1) Any claim that has been litigated to finality on the merits in any court of competent jurisdiction prior to January 1, 2003. Termination of a prior action on the basis of the statute of limitations does not constitute a claim that has been litigated to finality on the merits.
(2) Any written, compromised settlement agreement which has been entered into between a plaintiff and a defendant where the plaintiff was represented by an attorney who was admitted to practice law in this state at the time of the settlement, and the plaintiff signed the agreement.
(e) "Childhood sexual abuse" as used in this section includes any act committed against the plaintiff that occurred when the plaintiff was under the age of 18 years and that would have been proscribed by Section 266j of the Penal Code; Section 285 of the Penal Code; paragraph (1) or (2) of subdivision (b), or of subdivision (c), of Section 286 of the Penal Code; subdivision (a) or (b) of Section 288 of the Penal Code; paragraph (1) or (2) of subdivision (b), or of subdivision (c), of Section 288a of the Penal Code; subdivision (h), (i), or (j) of Section 289 of the Penal Code; Section 647.6 of the Penal Code; or any prior laws of this state of similar effect at the time the act was committed. Nothing in this subdivision limits the availability of causes of action permitted under subdivision (a), including causes of action against persons or entities other than the alleged perpetrator of the abuse.
(f) Nothing in this section shall be construed to alter the otherwise applicable burden of proof, as defined in Section 115 of the Evidence Code, that a plaintiff has in a civil action subject to this section.
(g) Every plaintiff 26 years of age or older at the time the action is filed shall file certificates of merit as specified in subdivision (h).
(h) Certificates of merit shall be executed by the attorney for the plaintiff and by a licensed mental health practitioner selected by the plaintiff declaring, respectively, as follows, setting forth the facts which support the declaration:
(1) That the attorney has reviewed the facts of the case, that the attorney has consulted with at least one mental health practitioner who is licensed to practice and practices in this state and who the attorney reasonably believes is knowledgeable of the relevant facts and issues involved in the particular *1597 action, and that the attorney has concluded on the basis of that review and consultation that there is reasonable and meritorious cause for the filing of the action. The person consulted may not be a party to the litigation.
(2) That the mental health practitioner consulted is licensed to practice and practices in this state and is not a party to the action, that the practitioner is not treating and has not treated the plaintiff, and that the practitioner has interviewed the plaintiff and is knowledgeable of the relevant facts and issues involved in the particular action, and has concluded, on the basis of his or her knowledge of the facts and issues, that in his or her professional opinion there is a reasonable basis to believe that the plaintiff had been subject to childhood sexual abuse.
(3) That the attorney was unable to obtain the consultation required by paragraph (1) because a statute of limitations would impair the action and that the certificates required by paragraphs (1) and (2) could not be obtained before the impairment of the action. If a certificate is executed pursuant to this paragraph, the certificates required by paragraphs (1) and (2) shall be filed within 60 days after filing the complaint.
(i) Where certificates are required pursuant to subdivision (g), the attorney for the plaintiff shall execute a separate certificate of merit for each defendant named in the complaint.
(j) In any action subject to subdivision (g), no defendant may be served, and the duty to serve a defendant with process does not attach, until the court has reviewed the certificates of merit filed pursuant to subdivision (h) with respect to that defendant, and has found, in camera, based solely on those certificates of merit, that there is reasonable and meritorious cause for the filing of the action against that defendant. At that time, the duty to serve that defendant with process shall attach.
(k) A violation of this section may constitute unprofessional conduct and may be the grounds for discipline against the attorney.
(l) The failure to file certificates in accordance with this section shall be grounds for a demurrer pursuant to Section 430.10 or a motion to strike pursuant to Section 435.
(m) In any action subject to subdivision (g), no defendant may be named except by "Doe" designation in any pleadings or papers filed in the action until there has been a showing of corroborative fact as to the charging allegations against that defendant.
*1598 (n) At any time after the action is filed, the plaintiff may apply to the court for permission to amend the complaint to substitute the name of the defendant or defendants for the fictitious designation, as follows:
(1) The application shall be accompanied by a certificate of corroborative fact executed by the attorney for the plaintiff. The certificate shall declare that the attorney has discovered one or more facts corroborative of one or more of the charging allegations against a defendant or defendants, and shall set forth in clear and concise terms the nature and substance of the corroborative fact. If the corroborative fact is evidenced by the statement of a witness or the contents of a document, the certificate shall declare that the attorney has personal knowledge of the statement of the witness or of the contents of the document, and the identity and location of the witness or document shall be included in the certificate. For purposes of this section, a fact is corroborative of an allegation if it confirms or supports the allegation. The opinion of any mental health practitioner concerning the plaintiff shall not constitute a corroborative fact for purposes of this section.
(2) Where the application to name a defendant is made prior to that defendant's appearance in the action, neither the application nor the certificate of corroborative fact by the attorney shall be served on the defendant or defendants, nor on any other party or their counsel of record.
(3) Where the application to name a defendant is made after that defendant's appearance in the action, the application shall be served on all parties and proof of service provided to the court, but the certificate of corroborative fact by the attorney shall not be served on any party or their counsel of record.
(o) The court shall review the application and the certificate of corroborative fact in camera and, based solely on the certificate and any reasonable inferences to be drawn from the certificate, shall, if one or more facts corroborative of one or more of the charging allegations against a defendant has been shown, order that the complaint may be amended to substitute the name of the defendant or defendants.
(p) The court shall keep under seal and confidential from the public and all parties to the litigation, other than the plaintiff, any and all certificates of corroborative fact filed pursuant to subdivision (n).
(q) Upon the favorable conclusion of the litigation with respect to any defendant for whom a certificate of merit was filed or for whom a certificate of merit should have been filed pursuant to this section, the court may, upon the motion of a party or upon the court's own motion, verify compliance with *1599 this section by requiring the attorney for the plaintiff who was required by subdivision (h) to execute the certificate to reveal the name, address, and telephone number of the person or persons consulted with pursuant to subdivision (h) that were relied upon by the attorney in preparation of the certificate of merit. The name, address, and telephone number shall be disclosed to the trial judge in camera and in the absence of the moving party. If the court finds there has been a failure to comply with this section, the court may order a party, a party's attorney, or both, to pay any reasonable expenses, including attorney's fees, incurred by the defendant for whom a certificate of merit should have been filed.
(r) The amendments to this section enacted at the 1990 portion of the 1989-90 Regular Session shall apply to any action commenced on or after January 1, 1991, including any action otherwise barred by the period of limitations in effect prior to January 1, 1991, thereby reviving those causes of action which had lapsed or technically expired under the law existing prior to January 1, 1991.
(s) The Legislature declares that it is the intent of the Legislature, in enacting the amendments to this section enacted at the 1994 portion of the 1993-94 Regular Session, that the express language of revival added to this section by those amendments shall apply to any action commenced on or after January 1, 1991.
(t) Nothing in the amendments to this section enacted at the 1998 portion of the 1997-98 Regular Session is intended to create a new theory of liability.
(u) The amendments to subdivision (a) of this section, enacted at the 1998 portion of the 1997-98 Regular Session, shall apply to any action commenced on or after January 1, 1999, and to any action filed prior to January 1, 1999, and still pending on that date, including any action or causes of action which would have been barred by the laws in effect prior to January 1, 1999. Nothing in this subdivision is intended to revive actions or causes of action as to which there has been a final adjudication prior to January 1, 1999.
NOTES
[1] We recognize that subdivision (m) of Code of Civil Procedure section 340.1 prohibits the naming of a defendant in an action, such as this one, which is subject to subdivision (g), until a court so orders, pursuant to subdivisions (n) and (o). In this case, however, the defendant Bishop, as a corporation sole, has filed pleadings in the public record identifying himself as the defendant sued as Doe 1. Because the identity of Doe 1 is now public, and because our discussion of the facts in this case would make little sense if we did not provide some means of identifying the type of defendant being sued, we refer to defendant Doe 1 as "the Bishop."
[2] In so ruling we emphasize that the issue before us is limited to a pure question of law. The Bishop did not challenge the sufficiency of the allegations to state a claim for delayed discovery under Code of Civil Procedure section 340.1 and we, therefore, have no opinion on that question.
[3] All further statutory references are to the Code of Civil Procedure.
[4] "[I]n 1994, and for the purpose of invalidating the holding in David A., the Legislature again amended Section 340.1 to provide that the extended statute of limitations applies to any action against an alleged perpetrator . . . commenced on or after January 1, 1991, including revival of those causes of action which had lapsed or technically expired under prior law." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1651 (1997-1998 Reg. Sess.) as amended July 16, 1998, p. 8, italics added, underscoring omitted.)
[5] The full text of section 340.1 is set forth in appendix A.
[6] This provision has been held unconstitutional to the extent it was intended to include the revival of cases which had been finally adjudicated to be time-barred. (Perez v. Roe 1 (2006) 146 Cal.App.4th 171, 188 [52 Cal.Rptr.3d 762].) These are not our facts.
[7] In 1979, the court in Velasquez v. Fibreboard Paper Products Corp. (1979) 97 Cal.App.3d 881 [159 Cal.Rptr. 113] held that asbestos claims governed by former section 340, subdivision 3 were subject to the delayed discovery rule. Thus, "negligence and strict liability claims for asbestos-caused injury accrued . . . when the plaintiff knew or should have discovered `that he was suffering from a disease that had caused or was likely to cause him injury for which relief could be sought at law.'" (Nelson, supra, 172 Cal.App.3d at p. 731.) Because Nelson knew by 1976 that he was suffering from asbestosis (id. at p. 730), the holding in Velasquez would not have affected the timeliness of Nelson's claim.
[8] A bill analysis prepared for the Senate Rules Committee explained: "Proponents assert that the emotional and psychological damage that results from childhood sexual abuse affects the public at large. Many victims will require state-funded therapy or other medical care. They contend that untreated victims often have problems with alcohol and drug abuse and low achievement and will require state-funded treatment programs and/or public assistance. Some victims will become perpetrators themselves. In short, it is the victims themselves, their families, and the public that now bear the financial and other burdens of this abuse while the responsible entities, which can prevent the harms, are free from potential liability." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1779 (2001-2002 Reg. Sess.) as amended May 15, 2002, p. 4.)
[9] For this reason, we grant plaintiffs' requests for judicial notice of the legislative history of section 340.1.
[10] It is an oversimplification to say that all claims discovered before 2003 would be barred. If a person discovered the cause of injury prior to January 1, 2003, but the three-year statute had not expired before the 2002 amendments took effect, such claims would also be included in the prospective application of the statute. (See, e.g., Andonagui v. May Dept. Stores Co. (2005) 128 Cal.App.4th 435, 441 [27 Cal.Rptr.3d 145].) Because those facts are not before us, we use the 2003 date for the sake of simplicity.
[11] Having concluded that section 340.1, subdivision (b)(2) is applicable to any causes of action pursuant to subdivision (a)(2), (3), if they are discovered and sued upon after the effective date of the 2002 amendments, we need not discuss plaintiffs' alternative theory that the Bishop can be sued under subdivision (a) as if it were a perpetrator under theories of vicarious liability or procurement.
[12] As with plaintiffs' causes of action under section 340.1, the issue as presented does not raise the sufficiency of the allegations to state a claim for common law delayed discovery and we, therefore, have no opinion on that question.